Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*apolk@girardsharp.com*
*sgrille@girardsharp.com*
*kmacey@girardsharp.com*

Sean Greene (SBN 328718)
**GIRARD SHARP LLP**
222 Pacific Coast Highway, Floor 10
El Segundo, CA 90245
Telephone: (415) 544-6453
*sgreene@girardsharp.com*

*Attorneys for Plaintiff*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| SALOMON PASSARIELLO, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>THE ATLANTIC MONTHLY GROUP LLC<br><br>        Defendant. | Case No<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT
Case No.

Plaintiff Salomon Passariello ("Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows against Defendant The Atlantic Monthly Group LLC ("The Atlantic").

## **INTRODUCTION**

1. This is a consumer privacy action against The Atlantic for disclosing its digital subscribers' identities and video-viewing preferences to Meta Platforms Inc. ("Meta"), which owns the social networking website and app Facebook, in violation of the Video Privacy Protection Act ("VPPA" or "the Act").

2. The VPPA prohibits "video tape service providers," such as The Atlantic, from knowingly disclosing a consumer's personally identifiable information ("PII")—in particular, "information which identifies a person as having requested or obtained specific video materials or services from a video tape provider"—unless the consumer expressly consented to the disclosure in a standalone consent form.

3. The Atlantic collects and shares users' personal information with Meta using a "Meta Pixel" or "Pixel"—a snippet of programming code that, once installed on a webpage, sends information to Meta. The Meta Pixel sends information to Meta in a data packet containing PII, such as the users' IP address, name, email, or phone number. Meta then stores this data on its own servers.

4. The information that The Atlantic shares with Meta includes the user's unique Facebook ID ("FID") and the titles of prerecorded videos that The Atlantic delivered to the user for viewing. A user's FID is linked to their Facebook profile, which generally contains a wide range of demographic and other information about the user, including pictures, personal interests, work history, relationship status, and other details.

5. The Atlantic discloses the user's FID and viewing content to Meta together in a single transmission. Because the user's FID uniquely identifies an individual's Facebook account, Meta—and any other ordinary person—can use the FID to quickly and easily locate, access, and view the user's corresponding Facebook profile. In

COMPLAINT
Case No.

simplest terms, the Pixel allows Meta to know what video content one of its users viewed on The Atlantic's website.

6.      At no point do The Atlantic users consent to such sharing through a standalone consent form, as required by the VPPA. As a result, The Atlantic violates the VPPA by disclosing this information to Meta.

7.      On behalf of a Class of similarly situated The Atlantic users, Plaintiff seeks appropriate relief through this action. Based on the facts set forth in this Complaint, The Atlantic violated the Video Privacy Protection Act ("VPPA") and is liable for unjust enrichment.

## PARTIES

8.      Plaintiff Salomon Passariello is a citizen and resident of Van Nuys, California.

9.      Plaintiff used his Internet-connected device and Web-browsing software ("browser") installed on that device to visit and watch video content on Defendant's website, www.TheAtlantic.com, as well as on Defendant's application during the Class Period as defined herein.

10.     Defendant The Atlantic is a Delaware corporation headquartered at 600 New Hampshire Ave NW Washington, DC 20037. The Atlantic is owned by The Atlantic Monthly Group LLC.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction under 28 U.S.C. § 1331 based on Plaintiff's claims under the Video Privacy Protection Act, 18 U.S.C. § 2710. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367.

12.     This Court also has jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Defendant and at least one Class member are domiciled in different states.

COMPLAINT
Case No.

13.     This Court has personal jurisdiction over The Atlantic because it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper and necessary.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PLAINTIFF-SPECIFIC ALLEGATIONS
### Salomon Passariello

15.     Plaintiff is a paid subscriber to The Atlantic and a Facebook user. He has been a paying member of The Atlantic since approximately 2020 and is therefore a "subscriber" to The Atlantic under the VPPA.

16.     Plaintiff's Facebook profile includes his name, photographs of himself, and other personal details.

17.     Plaintiff provided The Atlantic with his PII, including at least his name and email address, when subscribing to its services.

18.     Plaintiff requested or obtained prerecorded video content on The Atlantic regularly, including within the last two years.

19.     Plaintiff visited The Atlantic's website to request and watch prerecorded video content using the same browser that he uses to log in to Facebook, including while he was logged in to Facebook. He also uses the same device to request and watch prerecorded videos on The Atlantic that he uses for Facebook.

*   *   *

20.     The Atlantic sent Plaintiff's PII, including his FID, as well as the title of each prerecorded video he viewed, to Meta without obtaining his consent through a standalone consent form.

21.     Plaintiff values his privacy while web-browsing and watching videos.

COMPLAINT
Case No.

22.     Plaintiff's viewing preferences constitute personal information of a private and confidential nature and are assets to which no third party has a presumptive right to access.

## COMMON ALLEGATIONS

**a.     The Atlantic Disclosed Plaintiff's and Class Members' Private Viewing Information to Meta.**

23.     Users of The Atlantic ("Users") can access a variety of content on The Atlantic's website, including newsletters and articles related to topics such as technology, politics, health, and others.

24.     The Atlantic also provides and delivers prerecorded audiovisual content to its Users.

25.     Plaintiff requested and viewed prerecorded audiovisual content from The Atlantic.

26.     While Plaintiff and Class members were viewing prerecorded video content on The Atlantic's website, The Atlantic transmitted their viewing choices to Meta.

27.     The Atlantic's transmission of viewing information to Meta includes the specific names of video content viewed by Users, as well as the User's FID—a string of numbers unique to each Facebook profile that personally identifies the User.

28.     Anyone who possesses an FID may use this number to quickly and easily locate, access, and view the corresponding Facebook profile, which contains personal information, often in large quantities.

29.     A Facebook profile typically shows the Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts. This information may reveal even more sensitive personal information—for instance, posted photos may disclose the identity of family members, and written posts may disclose religious preferences, political affiliations, personal interests and more.

30.     Just as Meta can easily identify any individual on its Facebook platform with only their unique FID, so too can any ordinary person who comes into possession of an

4

COMPLAINT
Case No.

FID. Facebook admits as much on its website. Thus, equipped with an FID and the video content name and URL—all of which The Atlantic knowingly provides to Meta without appropriate consent from its subscribers—any ordinary person could determine the identity of The Atlantic subscriber and the specific video or media content they viewed on The Atlantic's website.

31.     The Atlantic transmits the FID and video title to Meta in a single transmission, through an invisible tracking tool called a "Meta Pixel."

32.     A Meta Pixel is a snippet of a programming code that, once installed on a webpage, sends information to Meta. This transmission occurs when a User views a prerecorded video on The Atlantic's website.

33.     The Pixel is an advertising tool that allows website owners to track visitor actions on their websites for purposes of sending the corresponding information to Meta; websites use the Pixel in hopes of better targeting their products and services on Facebook to interested consumers. Thus, a business such as The Atlantic chooses to install the Pixel on its website in order to increase its profits.

34.     According to Meta's website, the Pixel allows it "to match your website visitors to their respective Facebook User accounts" and that "[o]nce matched, we can tally their actions in the Facebook Ads Manager so you can use the data to analyze your website's conversion flows and optimize your ad campaigns."[1]

35.     The Atlantic knew that by installing the Pixel on its website, the Pixel would send Meta information identifying its Users and their video-watching habits.

36.     Meta's website explains that, to begin using the Meta Pixel, a business must first "install" the Pixel "by placing the Meta Pixel base code on all pages of your website[.]"[2] The Atlantic made the conscious decision to undertake this installation process.

---

[1] https://developers.facebook.com/docs/meta-pixel/get-started (last visited October 26, 2022).

[2] Id.; https://www.facebook.com/business/tools/meta-pixel/get-started (last visited October 24, 2022).

COMPLAINT
Case No.

37.     Further demonstrating that The Atlantic knowingly placed the Pixel in its website code, Meta's website states that "[d]evelopers and marketers can optionally choose to send information about" a visitor's activity on its website. (Emphasis added).3

38.     Meta benefits from websites like The Atlantic installing its Pixel. When the Pixel is installed on a business's website, the business has a greater incentive to advertise through Facebook or other Meta-owned platforms, like Instagram. In addition, even if the business does not advertise with Facebook, the Pixel assists Meta in building more fulsome profiles of its own users, which in turn allows Meta to profit from providing more targeted ads. The Pixel is installed on websites all over the internet and, accordingly, provides Meta with information about its users' preferences, other distinguishing traits, and web-browsing activities outside of Meta-owned platforms.

39.     Using the Meta Pixel likewise benefits The Atlantic's business by improving its ability to promote its content and services to its Users, thereby increasing its profits.

40.     Through use of the Meta Pixel, The Atlantic discloses to Meta the full name of each video a User watched, together with the User's FID, thus linking Users' viewing content choices and preferences to their Facebook profiles. In other words, this single transmission connects a User's viewing content with their FID.

41.     The Atlantic violates and invades the privacy rights of Users with its practice of sending their FIDs, together with their viewing content, to Meta. Plaintiff and Class members neither knew of nor authorized, nor otherwise consented to, The Atlantic's disclosure of their prerecorded video and video-services requests and their identities to Meta.

**b.      The Atlantic's Terms of Service and Privacy Policy Do Not Operate as a Standalone Consent Form as Required by the VPPA.**

42.     The VPPA requires that consent be obtained in a form "distinct and separate from any form setting forth other legal or financial obligations of the consumer." 18 U.S.C. § 2710. The Atlantic's website includes its Terms of Service and a Privacy

---

3 https://developers.facebook.com/docs/meta-pixel (last visited October 26, 2022).

COMPLAINT
Case No.

Policy, neither of which operate as a standalone consent form disclosing The Atlantic's practices at issue and requesting User consent.

43.     At no point were Plaintiff or other The Atlantic Users given a standalone consent form disclosing The Atlantic's practices at issue and requesting user consent. Hence, no User knew of or consented to The Atlantic's offending practice of sharing video preferences with third parties.

### c.     Plaintiff and the Class Were Harmed by The Atlantic's Privacy Invasions.

44.     The Atlantic shared with Meta the personal information of Plaintiff and Class members, including their video-viewing histories and associated FIDs, which they reasonably expected would be kept private.

45.     The personal information The Atlantic obtained from Plaintiff and Class members constitutes valuable data in the digital advertising-related market for consumer information. The Atlantic's wrongful acquisition and use of their personal and private information deprived Plaintiff and Class members of control over that information, and prevented them from realizing its full value for themselves.

46.     The Atlantic's conduct caused economic harm to Plaintiff and Class members whose PII diminished in value when The Atlantic made this information available to Meta.

47.     The Atlantic's conduct has also resulted in economic harm to Plaintiff and Class members who were Atlantic subscribers during the Class Period in that they have paid subscription fees to The Atlantic for services that they did not expect would subject them to the practices described herein, thereby diminishing the value of services for which they paid The Atlantic, and constituting loss.

48.     Plaintiff and Class members paid for access to The Atlantic's website, in part, because they trusted that The Atlantic's privacy practices comported with their privacy preferences.

COMPLAINT
Case No.

49.     The harms described above are aggravated by The Atlantic's continued retention and commercial use of Plaintiff's and Class members' personal information, including their private video-viewing histories.

## CLASS ACTION ALLEGATIONS

50.     Plaintiff brings this lawsuit under Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), and/or (c)(4) as representatives of the following Class and constituent Subclass:

> **Nationwide Class**: All persons in the United States who subscribed to TheAtlantic.com, viewed prerecorded video content on TheAtlantic.com, and used Facebook during the time Meta's Pixel was active on TheAtlantic.com.

> **California Subclass**: All persons in California who subscribed to TheAtlantic.com, viewed prerecorded video content on TheAtlantic.com, and used Facebook during the time Meta's Pixel was active on TheAtlantic.com.

51.     The "Class Period" is from January 1, 2013 to the present.

52.     Excluded from the Class are Defendant, its employees, agents and assigns, and any members of the judiciary to whom this case is assigned, their respective court staff, the members of their immediate families, and Plaintiff's counsel.

53.     Plaintiff reserves the right to modify, change, or expand the Class definition based upon discovery and further investigation.

54.     **Numerosity**: The Class consists of at least hundreds of thousands of individuals, making joinder impractical.

55.     **Commonality and Predominance**: Common questions of law and fact exist with regard to each of the claims and predominate over questions affecting only individual Class members. Questions common to the Class include:

    a.     Whether The Atlantic's use of the Meta Pixel was without User consent or authorization;

COMPLAINT
Case No.

b.      Whether The Atlantic obtained and shared or caused to be obtained and shared Plaintiff's and Class members' personal information through tracking using the Meta Pixel, which The Atlantic installed on its webpages;

c.      Whether third parties obtained Plaintiff's and Class members' personal information as a result of The Atlantic's conduct described herein;

d.      Whether The Atlantic's conduct violates the Video Privacy Protection Act, 18 U.S.C. § 2710, et seq.;

e.      Whether The Atlantic's conduct violates California consumer protection law;

f.      Whether The Atlantic was unjustly enriched as a result of sharing users' information with Meta;

g.      Whether The Atlantic's acquisition and transmission of Plaintiff's and Class members' personal information resulted in harm; and

h.      Whether The Atlantic should be enjoined from engaging in such conduct in the future.

56.    **Typicality**: Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by The Atlantic's misconduct at issue—i.e., disclosing Users' PII and viewing content to Meta without appropriate consent.

57.    **Adequacy of Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, including privacy protection cases. Plaintiff does not have any interests antagonistic to those of the Class.

58.    **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce The Atlantic to comply with applicable law. Moreover, because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of The Atlantic's financial resources, Class members are unlikely

9

COMPLAINT
Case No.

to pursue legal redress individually for the violations detailed in this Complaint. A class action will allow these claims to be heard where they would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

59.     Class certification is also appropriate under Rules 23(b)(1) and/or (b)(2) because:

a.     The prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for The Atlantic;

b.     The prosecution of separate actions by individual Class members would create a risk of adjudications that would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudications, or would substantially impair or impede their ability to protect their interests; and

c.     The Atlantic acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the members of the Class as a whole.

## TOLLING OF THE STATUTES OF LIMITATIONS

60.     All applicable statute(s) of limitations have been tolled by The Atlantic's knowing and active concealment and denial of the facts alleged herein. Plaintiff and Class members could not have reasonably discovered The Atlantic's practices of sharing their personal viewing content and PII with Meta until shortly before this class action litigation commenced.

61.     The Atlantic was and remains under a continuing duty to disclose to Plaintiff and Class members its practice of sharing personal viewing content and PII to Meta. As a result of the active concealment by The Atlantic, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

COMPLAINT
Case No.

# FIRST CAUSE OF ACTION

## Violation of the Video Privacy Protection Act

### 18 U.S.C. § 2710, *et seq.*

62.     Plaintiff incorporates and realleges the above factual allegations by reference.

63.     The VPPA prohibits a "video tape service provider" from knowingly disclosing "personally-identifying information" concerning any consumer to a third-party without the "informed, written consent (including through an electronic means using the Internet) of the consumer." 18 U.S.C. § 2710.

64.     As defined in 18 U.S.C. § 2710(a)(4), a "video tape service provider" is "any person, engaged in the business, in or affecting interstate commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audiovisual materials." The Atlantic is a "video tape service provider" as defined in 18 U.S.C. § 2710(a)(4) because it is engaged in the business of delivering audiovisual materials—including the prerecorded videos that Plaintiff viewed—through its online platform that are similar to prerecorded video cassette tapes and those deliveries affect interstate or foreign commerce.

65.     As defined in 18 U.S.C. § 2710(a)(3), "personally identifiable information" is defined to include "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider."

66.     The Atlantic knowingly caused personal viewing information, including FIDs, concerning Plaintiff and Class members to be disclosed to Meta. This information constitutes personally identifiable information under 18 U.S.C. § 2710(a)(3) because it identified each Plaintiff and Class member to Meta as an individual who viewed The Atlantic's video content, including the specific prerecorded video materials each such individual watched on The Atlantic's website. This information allowed Meta to identify each Plaintiff and Class members' specific individual video-viewing preferences and habits.

COMPLAINT
Case No.

67.     As defined in 18 U.S.C. § 2710(a)(1), a "consumer" means "any renter, purchaser, or subscriber of goods or services from a video tape service provider." As alleged above, Plaintiff is a subscriber to The Atlantic's services providing video content to Users on its website and viewed prerecorded videos provided on The Atlantic's platform. Hence, Plaintiff is a "consumer" under this definition.

68.     As set forth in 18 U.S.C. § 2710(b)(2)(B), "informed, written consent" must be (1) in a form distinct and separate from any form setting forth other legal or financial obligations of the consumer; and (2) at the election of the consumer, is either given at the time the disclosure is sought or is given in advance for a set period of time not to exceed two years or until consent is withdrawn by the consumer, whichever is sooner. The Atlantic failed to obtain informed, written consent under this definition.

69.     Additionally, the VPPA creates an opt-out right for consumers in 18 U.S.C. § 2710(b)(2)(B)(iii). The Act requires video tape service providers to "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." The Atlantic failed to provide an opportunity to opt out as required by the Act.

70.     The Atlantic was aware that the disclosures to Meta that were shared through the Pixel identified Plaintiff and Class members. The Atlantic also knew that Plaintiff's and Class members' personal viewing content was disclosed to Meta because The Atlantic programmed the Meta Pixel into its website code, knowing that Meta would receive video titles and the subscriber's FID when a user watched a prerecorded video.

71.     By knowingly disclosing Plaintiff's and Class members' personal viewing content, The Atlantic violated Plaintiff's and Class members' statutorily protected right to privacy in their prerecorded video-watching habits. See 18 U.S.C. § 2710(c).

72.     As a result of the above violations, The Atlantic is liable to Plaintiff and Class members for actual damages related to their loss of privacy in an amount to be determined at trial or, alternatively, for "liquidated damages not less than $2,500 per

plaintiff." 18 U.S.C. § 2710(c)(2)(A). Under the Act, The Atlantic is also liable for reasonable attorney's fees, other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury and sufficient to prevent and deter the same or similar conduct by The Atlantic in the future.

## SECOND CAUSE OF ACTION

### Violation of California's Unfair Competition Law (the "UCL")

### Cal. Bus. & Prof. Code § 17200, et seq.

### (On Behalf of the California Subclass)

73.     California Plaintiff incorporates and realleges the above factual allegations by reference.

74.     The UCL proscribes "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.

### Unlawful

75.     A business practice is "unlawful" under the UCL if it violates any other law or regulation.

76.     The Atlantic's business acts and practices are unlawful because they violate the Video Privacy Protection Act as set forth above. The Atlantic is therefore in violation of the "unlawful" prong of the UCL.

### Unfair

77.     The Atlantic's conduct is unfair in violation of the UCL because it violates California's and the nation's legislatively declared public policy in favor of protection of consumer privacy. See S. Rep. No. 100-500 at 7-8 (1988) (finding that "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems . . . create[s] privacy interests that directly affect the ability of people to express their opinions, to join in association with others, and to enjoy the freedom and independence that the Constitution was established to safeguard."); California Bill Analysis, A.B. 375 Assem. (June 27, 2017) (noting that "[t]he unregulated and unauthorized disclosure of personal information and the resulting

COMPLAINT
Case No.

loss of privacy can have devastating effects for individuals, ranging from financial fraud, identity theft, and unnecessary costs to personal time and finances, to the destruction of property, harassment, reputational damage, emotional stress, and even potential physical harm.").

78.     Further, The Atlantic's conduct is unfair because it is unethical, unscrupulous, offensive, and substantially injurious. The gravity of harm resulting from The Atlantic's unfair conduct outweighs any potential utility therefrom. The disclosure of California Plaintiff's and Subclass members' personal information without their express consent raises significant privacy concerns, and any potential utility from these disclosures (such as increased revenue to the Atlantic due to more targeted advertising) is outweighed by their considerable harm to California Plaintiff and the Subclass.

79.     The Atlantic's unfair business practices include disclosing California Plaintiff's and Subclass members' FIDs and viewing content to Meta without authorization or consent, causing harm to California Plaintiff and Subclass members.

80.     The Atlantic actually and proximately caused harm to California Plaintiff and Subclass members in that, among other things, they suffered economic injury by overpaying for their subscriptions.

81.     For these reasons, The Atlantic is in violation of the "unfair" prong of the UCL.

82.     California Plaintiff and Subclass members accordingly seek appropriate relief, including (1) restitution under the UCL; and (2) such orders or judgments as may be necessary to enjoin The Atlantic from continuing its unfair and unlawful practices. There is no adequate remedy at law that would provide redress to California Plaintiff and the Subclass or ensure that The Atlantic will not engage in the same data practices in the future. California Plaintiff also seeks reasonable attorneys' fees and costs under applicable law, including under California Code of Civil Procedure section 1021.5.

## THIRD CAUSE OF ACTION

### Unjust Enrichment

83.     Plaintiff incorporates and realleges the above factual allegations by reference.

84.     The Atlantic acted wrongfully by sharing Users' FIDs and viewing content to Meta without their consent.

85.     The Atlantic's practice of sharing Users' personal information and viewing content with Meta without their consent, and its failure to disclose this practice, caused The Atlantic to realize profits it otherwise would not have received, including from its improved ability to promote its content and services to its Users and its improved ability to sell advertising space on its website.

86.     The Atlantic's retention of these ill-gotten gains is unjust and inequitable.

87.     Plaintiff, on behalf of himself and the Class, accordingly seeks restitution, restitutionary disgorgement, and all other appropriate relief permitted by the law of unjust enrichment, including reasonable attorneys' fees and costs. There is no adequate remedy at law that would provide redress to Plaintiff and the Class or ensure that The Atlantic will not deploy the same data practices in the future.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court:

A.     Certify this case as a class action, and appoint Plaintiff as Class Representative and the undersigned attorneys as Class Counsel;

B.     Enter judgment in favor of Plaintiff and the Class;

C.     Enter injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and Class members, including reformation of practices and an accounting and purging of wrongfully obtained personal information;

D.     Award all actual, general, special, incidental, statutory, treble, punitive, liquidated, and consequential damages and/or restitution to which Plaintiff and Class members are entitled;

E.     Award disgorgement of monies obtained through and as a result of the wrongful conduct alleged herein;

F.     Award Plaintiff and Class members pre- and post-judgment interest as provided by law;

G.     Enter such other orders as may be necessary to restore to Plaintiff and Class members any money and property acquired by Defendant through its wrongful conduct;

H.     Award Plaintiff and Class members reasonable litigation expenses and attorneys' fees as permitted by law; and

I.     Award such other and further relief as the Court deems necessary and appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all issues triable as of right.

Dated: December 12, 2022                    Respectfully submitted,

By: */s/ Adam E. Polk*

Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*apolk@girardsharp.com*
*sgrille@girardsharp.com*
*kmacey@girardsharp.com*

COMPLAINT
Case No.

Sean Greene (SBN 328718)
**GIRARD SHARP LLP**
222 Pacific Coast Highway, Floor 10
El Segundo, CA 90245
Telephone: (415) 544-6453
*sgreene@girardsharp.com*

Christopher J. Cormier (*Pro Hac Vice* to be filed)
**BURNS CHAREST LLP**
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
*ccormier@burnscharest.com*

Hannah Crowe (*Pro Hac Vice* to be filed)
Lauren Cross (*Pro Hac Vice* to be filed)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
*hcrowe@burnscharest.com*
*lcross@burnscharest.com*

*Attorneys for Plaintiff*

17
COMPLAINT
Case No.