Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
*apolk@girardsharp.com*
*sgrille@girardsharp.com*
*kmacey@girardsharp.com*

Sean Greene (SBN 328718)
**GIRARD SHARP LLP**
222 Pacific Coast Highway, Floor 10
El Segundo, California 90245
Tel: (415) 544-6453
*sgreene@girardsharp.com*

[Additional counsel on signature page]

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| SALOMON PASSARIELLO, individually and on behalf of all others similarly situated,<br><br>     Plaintiff,<br><br>   v.<br><br>THE ATLANTIC MONTHLY GROUP LLC,<br><br>     Defendant. | CASE NO. 2:22-CV-08993-JLS-AFM<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date: June 9, 2023<br>Time: 10:30 a.m.<br>Courtroom: 8A<br>Judge: Hon. Josephine L. Staton<br>Trial Date: None Set |

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................1

II.   STATEMENT OF FACTS ......................................................................2

III.  ARGUMENT..........................................................................................3

    A.    Plaintiff Sufficiently Alleges a VPPA Claim.................................4

        1.    The Atlantic Is a "Video Tape Service Provider." ............4

        2.    The Atlantic Disclosed Plaintiff's PII................................6

            a.    A Facebook ID Is PII...............................................6

            b.    The Atlantic—Not Plaintiff's Browser—Disclosed His PII............................................................................8

            c.    The Atlantic's Disclosures Were Made "Knowingly."............9

            d.    The Atlantic's Disclosures Were Not Permitted by the VPPA. ........................................................................10

        3.    Plaintiff Has Standing to Assert a VPPA Claim................11

    B.    The VPPA Does Not Violate the First Amendment. ...................13

        1.    The VPPA Regulates Commercial Speech........................14

        2.    The VPPA Is Not Vague or Overbroad. ...........................16

        3.    The VPPA Meets Intermediate Scrutiny. ..........................19

            a.    The VPPA Protects a Substantial Privacy Interest.................19

            b.    The VPPA's Restrictions Directly Advance the Stated Interest. ......................................................................20

            c.    The VPPA Reaches No Further Than Necessary...................21

        4.    The Atlantic's As-Applied Challenge Similarly Fails.......22

    C.    The UCL Claim is Well-Pled.......................................................23

    D.    Plaintiff Adequately Alleges Unjust Enrichment........................25

IV.  CONCLUSION.....................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Abramson v. AP Gas & Elec. (PA), LLC*,
2023 WL 1782728 (W.D. Pa. Feb. 6, 2023)...................................................13

*Alexander v. United States*,
509 U.S. 544 (1993)...........................................................................................23

*Ambrose v. Boston Globe Media Partners LLC*,
2022 WL 4329373 (D. Mass. Sept. 19, 2022).......................................5, 8, 9

*Babbitt v. Sweet Home Chapter of Communities for a Great Oregon*,
515 U.S. 687 (1995)...........................................................................................17

*Bank of Am. Corp. v. City of Miami, Fla.*,
581 U.S. 189 (2017).....................................................................................12, 13

*Barr v. Am. Ass'n of Pol. Consultants*, Inc.,
140 S. Ct. 2335 (2020)......................................................................................19

*Bd. of Tr. of the State Univ. of N.Y. v. Fox*,
492 U.S. 469 (1989).....................................................................................14, 22

*Belozerov v. Gannett Co., Inc.*,
2022 WL 1783215 (D. Mass. Dec. 20, 2022)......................................5, 8

*Bennett v. Spear*,
520 U.S. 154 (1997)...........................................................................................11

*Boelter v. Advance Mag. Publishers Inc.*,
210 F. Supp. 3d 579 (S.D.N.Y. 2016) .................................................14, 20, 22

*Boelter v. Hearst Commc'ns, Inc.*,
192 F. Supp. 3d 427 (S.D.N.Y. 2016) ....................14, 15, 16, 19, 20, 21, 22

*Brown v. Entertainment Merchant's Association*,
564 U.S. 786 (2011)...........................................................................................19

*Bruton v. Gerber Prod. Co.*,
703 F. App'x 468 (9th Cir. 2017) ...................................................................24

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
271 F.3d 1141 (9th Cir. 2001) .....................................................................16, 17

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980)................................................................14, 19, 21

*Chennette v. Porch.com, Inc.*,
    50 F.4th 1217 (9th Cir. 2022) ....................................................13

*ChromaDex, Inc. v. Elysium Health, Inc.*,
    2017 WL 7080237 (C.D. Cal. Nov. 28, 2017) ........................25

*Clear Channel Outdoor, Inc. v. City of New York*,
    594 F.3d 94 (2d Cir. 2010) ........................................................22

*Cohen v. Cowles Media Co.*,
    501 U.S. 663 (1991)............................................................21, 23

*Ctr. for Individual Freedom v. Madigan*,
    697 F.3d 464 (7th Cir. 2012) ....................................................16

*Czarnionka v. Epoch Times Ass'n, Inc.*,
    2022 WL 17069810 (S.D.N.Y. Nov. 17, 2022)...................5, 7, 8

*Czarnionka v. Epoch Times Ass'n, Inc.*,
    2022 WL 17718689 (S.D.N.Y. Dec. 15, 2022) ..........................8

*Dahlstrom v. Sun-Times Media, LLC*,
    777 F.3d 937 (7th Cir. 2015) ...............................................14, 22

*DOJ. v. Reps. Comm. For Freedom of Press*,
    489 U.S. 749 (1989).....................................................................20

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*,
    472 U.S. 749 (1985)..........................................................15, 16, 19

*Eichenberger v. ESPN Inc.*,
    876 F.3d 979 (9th Cir. 2017) ........................6, 7, 11, 12, 13, 19

*Ellis v. Cartoon Network, Inc.*,
    803 F.3d 1251 (11th Cir. 2015) ................................................21

*Feldman v. Star Trib. Media Co. LLC*,
    2023 WL 2388381 (D. Minn. Mar. 7, 2023) ..........................8, 9

*Fla. Bar v. Went For It, Inc.*,
    515 U.S. 618 (1995)....................................................................22

*Foti v. City of Menlo Park*,
    146 F.3d 629 (9th Cir. 1998) ....................................................14

iii

*Gianino v. Alacer Corp.*,
  2010 WL 11468710 (C.D. Cal. Aug. 4, 2010) ................................................24

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972) ................................................................................17

*Greenley v. Laborers' Int'l Union of N. Am.*,
  271 F. Supp. 3d 1128 (D. Minn. 2017) .....................................................22

*Harris v. Pub. Broad. Serv.*,
  2023 WL 2583118 (N.D. Ga. Mar. 20, 2023) ..........................................8, 9

*Hennigan v. Gen. Elec. Co.*,
  2010 WL 3905770 (E.D. Mich. Sept. 29, 2010) .......................................25

*In re Adobe Sys., Inc. Priv. Litig.*,
  66 F. Supp. 3d 1197 (N.D. Cal. 2014) ......................................................24

*In re Anthem, Inc. Data Breach Litig.*,
  162 F. Supp. 3d 953 (N.D. Cal. 2016) ......................................................24

*In re Anthem, Inc. Data Breach Litig.*,
  2016 WL 3029783 (N.D. Cal. May 27, 2016) ...........................................24

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................4

*In re Google Location Hist. Litig.*,
  514 F. Supp. 3d 1147 (N.D. Cal. 2021) ....................................................25

*In re Hulu Priv. Litig.*,
  2012 WL 3282960 (N.D. Cal. Aug. 10, 2012) .......................................5, 20

*In re Hulu Privacy Litig.*,
  2014 WL 1724344 (N.D. Cal. Apr. 28, 2014) ..........................................8, 9

*In re Nickelodeon Consumer Privacy Litig.*,
  827 F.3d 262 (3d Cir. 2016) .................................................................6, 12

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...............................2, 4, 5, 11, 13, 18

*Iskander v. Laugh Factory, Inc.*,
  2020 WL 2114939 (C.D. Cal. Mar. 17, 2020) ..........................................25

*Jawk Enters., LLC v. Greenlight Energy, Inc.*,
  2019 WL 5881752 (E.D.N.Y. Nov. 5, 2019) ............................................12

iv

*King v. Gen. Info. Servs., Inc.*,
   903 F. Supp. 2d 303 (E.D. Pa. 2012) ..................................................................15

*Klein v. Chevron U.S.A., Inc.*,
   202 Cal. App. 4th 1342 (2012) ........................................................................23

*Klein v. San Diego Cty.*,
   463 F.3d 1029 (9th Cir. 2006) ..........................................................................17

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ........................................................................................16

*Krakauer v. Dish Network, L.L.C.*,
   925 F.3d 643 (4th Cir. 2019) ............................................................................13

*Lebakken v. WebMD, LLC*,
   2022 WL 16716151 (N.D. Ga. Nov. 4, 2022) ............................................5, 8, 9

*Legal Aid Servs. of Oregon v. Legal Servs. Corp.*,
   608 F.3d 1084 (9th Cir. 2010) ..........................................................................23

*Lexmark Int'l, Inc. v. Static Control Components*, Inc.,
   572 U.S. 118 (2014) ........................................................................................12

*Louth v. NFL Enters. LLC*,
   2022 WL 4130866 (D.R.I. Sept. 12, 2022) ........................................................5, 9

*Mollett v. Netflix, Inc.*,
   795 F.3d 1062 (9th Cir. 2015) ..........................................................................20

*Nat'l Endowment for the Arts v. Finley*,
   524 U.S. 569 (1998) ........................................................................................16

*Nat'l Fed'n of Blind v. FTC*,
   303 F. Supp. 2d 707 (D. Md. 2004), *aff'd* 420 F.3d 331 (4th Cir. 2005) ..............22, 23

*Norwest Mortg., Inc. v. Super. Ct*,
   72 Cal. App. 4th 214 (1999) ............................................................................25

*Ocean Advocs. v. U.S. Army Corps of Engineers*,
   402 F.3d 846 (9th Cir. 2005) ............................................................................12

*Organized Vill. of Kake v. U.S. Dep't of Agric.*,
   795 F.3d 956 (9th Cir. 2015) ............................................................................12

*Overstock.com v. Gradient Analytics, Inc.*,
   151 Cal. App. 4th 688 (2007) ..........................................................................24

v

*Pallen v. Twin Hill Acquisition Co.*,
   2013 WL 12130033 (C.D. Cal. Apr. 26, 2013) ............................................24

*Perry v. Cable News Network, Inc.*,
   854 F.3d 1336 (11th Cir. 2017) ...........................................................12, 20

*Ray Charles Found. v. Robinson*,
   795 F.3d 1109 (9th Cir. 2015) .......................................................................12

*Ready Transp., Inc. v. AAR Mfg., Inc.*,
   2006 WL 2131308 (E.D. Cal. July 27, 2006)..............................................25

*Retail Digital Network, LLC v. Prieto*,
   861 F.3d 839 (9th Cir. 2017) ...........................................................14, 15, 19

*Robinson v. Disney Online*,
   152 F. Supp. 3d 176 (S.D.N.Y. 2015) ...........................................................7

*Rose v. Locke*,
   423 U.S. 48 (1975)...........................................................................................17

*Sisley v. DEA*,
   11 F.4th 1029 (9th Cir. 2021) ......................................................................11

*Snyder v. Phelps*,
   562 U.S. 443 (2011)..........................................................................................15

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011)..........................................................................................15

*Stark v. Patreon, Inc.*,
   --- F. Supp. 3d ----, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) ................7

*Swearingen v. Late July Snacks LLC*,
   2017 WL 1806483 (N.D. Cal. May 5, 2017)................................................25

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
   566 U.S. 560 (2012)..........................................................................................17

*Trans Union Corp. v. F.T.C.* ("*Trans Union I*"),
   245 F.3d 809 (D.C. Cir. 2001) .......................................................................14

*Trans Union Corp. v. F.T.C.* ("*Trans Union II*"),
   267 F.3d 1138 (D.C. Cir. 2001) .......................................................14, 16, 20

*United States v. De Anda*,
   2019 WL 1207452 (N.D. Cal. Mar. 14, 2019) ...........................................16

vi

*United States v. Kilbride*,
   584 F.3d 1240 (9th Cir. 2009) ....................................................................17

*United States v. King*,
   2022 WL 17668454 (E.D. Pa. Dec. 14, 2022)..........................................18

*United States v. Skinner*,
   25 F.3d 1314 (6th Cir. 1994) .....................................................................18

*United States v. Williams*,
   502 F.2d 581 (8th Cir. 1974) .....................................................................17

*Van Bergen v. State of Minnesota*,
   59 F.3d 1541 (8th Cir. 1995) .....................................................................23

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982)...................................................................................18

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ..................................................................................17

*Washington State Grange v. Washington State Republican Party*,
   552 U.S. 442 (2008) ..................................................................................14

*Whalen v. Roe*,
   429 U.S. 589 (1977)...................................................................................19

*Wilson v. Triller, Inc.*,
   598 F. Supp. 3d 82 (S.D.N.Y. 2022) ........................................................13

*Yershov v. Gannett Satellite Info. Networks, Inc.*,
   820 F.3d 482 (1st Cir. 2016)........................................................................6

*Yu v. Signet Bank/Va.*,
   69 Cal. App. 4th 1377 (1999) ....................................................................25

**Statutes**

18 U.S.C. § 2710.........................................................................................1, 6

18 U.S.C. § 2710(a) .........................................................................................3

18 U.S.C. § 2710(a)(3)...................................................................................6, 9

18 U.S.C. § 2710(a)(4).................................................................................4, 17

18 U.S.C. § 2710(b) .........................................................................................3

18 U.S.C. § 2710(b)(1)....................................................................................12

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE NO. 2:22-CV-08993-JLS-AFM

18 U.S.C. § 2710(b)(2)(B) ........................................................................... 21

18 U.S.C. § 2710(b)(2)(D)(i) ........................................................................ 10

18 U.S.C. § 2710(b)(2)(D)(ii) ....................................................................... 10

**Other Authorities**

Restatement (Second) of Torts § 652A cmt. a ............................................. 20

S. Rep. 100-599 (1988) ................................................................... 6, 19, 20

**Rules**

Fed. R. Civ. P. 15 ....................................................................................... 25

Fed. R. Civ. P. 9(b) ...................................................................................... 9

## I.    INTRODUCTION

Defendant The Atlantic Monthly Group LLC owns and operates the website www.TheAtlantic.com, which provides prerecorded video content on topics such as politics, health, and technology. Plaintiff Salomon Passariello is a Facebook user and a paid subscriber to The Atlantic who provided his personal information to The Atlantic when subscribing to its services. Using a snippet of programming code on its website known as the Meta Pixel, The Atlantic sent information to Facebook's parent, Meta Platforms, Inc., that allows an ordinary person to identify Plaintiff and the titles of videos he requested and viewed on its site. The Atlantic's repeated citations of its Privacy Policy in its motion to dismiss underscore that it disclosed Plaintiff's personally identifiable information ("PII") without first obtaining his consent to share this information in a standalone form. It therefore violates the Video Privacy Protection Act, 18 U.S.C. § 2710.

Plaintiff alleges The Atlantic made the business decision to disclose his PII by coding in the Pixel to obtain revenue and optimize its advertising. Plaintiff is a "consumer" under the VPPA, and in losing control over his private information, he suffered the injury contemplated and protected by the VPPA. He thus has standing and states a claim. The Atlantic insists that it is not a "video tape service provider" subject to the VPPA's requirements, but a substantial amount of its business is devoted to delivering prerecorded video content to its subscribers. It therefore fits comfortably within the VPPA's definition of a video tape service provider. The statute does not exempt news media; courts have repeatedly held that similar news organizations are subject to the VPPA. Numerous courts have also held that the Facebook ID ("FID") is PII. The Atlantic disclosed not only the FID but the titles of the videos Plaintiff watched, revealing his personal video-watching habits. Its insistence that Plaintiff's own browser or cookie settings disclosed his PII is contrary to the allegations and implicates questions of fact.

Unable to show that Plaintiff's substantive VPPA allegations are deficient, The Atlantic pivots to argue that the VPPA violates the First Amendment as vague and overbroad. But The Atlantic fails to demonstrate that the law infringes a substantial

1

amount of protected speech. It concedes that the law is a regulation of commercial speech and such speech receives reduced constitutional protection; moreover, the VPPA was enacted to protect the private information of consumers that are not matters of public concern. Nor does the statute substantially chill speech, as its provisions have plain and ordinary meanings and are clear to a person of common intelligence. As a restriction of commercial speech, the VPPA passes intermediate scrutiny because it protects a recognized governmental interest in ensuring consumer privacy. Its limitations on disclosures by service providers directly advance that interest, and the statute reaches no further than necessary to achieve its legitimate objective of protecting privacy.

The Atlantic's challenges to Plaintiff's California's Unfair Competition Law and unjust enrichment claims also lack merit. The Atlantic's UCL argument ignores that Plaintiff brings his claim under the UCL's "unlawful" and "unfair" prongs, not the "fraud" prong. The unjust enrichment claim should be upheld because The Atlantic wrongfully obtained a financial benefit when it disregarded Plaintiff's substantive privacy interests for its own bottom line.

## II.   STATEMENT OF FACTS

The Atlantic is a multimedia organization that provides users a variety of content including newsletters, articles, and prerecorded audiovisual material. ¶¶ 23–24.[1] When an Atlantic subscriber like Plaintiff visits TheAtlantic.com to watch a video,[2] the "Meta Pixel" or "Pixel"—code installed on its website—transmits the subscriber's personal information to Meta. ¶¶ 31–32. This tool allows The Atlantic to track visitors' activity on its website and to increase its revenue by refining the targeting of its advertising on Facebook. ¶ 33.

---

[1] "¶" references are to the Class Action Complaint. (Doc. 1).

[2] The Atlantic says it is "nothing like the 'video rental store' contemplated by Congress" (Mot. at 27), yet this Court has found that text of the VPPA "unmistakably indicates that Congress intended to cover more than just the local video rental store." *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017).

The Pixel incorporated into The Atlantic's website sends the subscriber's FID and the title of the video the subscriber requested to Meta in a single unencrypted transmission. ¶¶ 5, 31, 40. The FID is unique and linked to a specific Facebook profile containing a range of personal details and demographic information, such as personal interests, work history, relationship status, and photographs. ¶¶ 4–5. Because the FID serves as a unique identifier for an individual's Facebook account, Meta—or any ordinary person who receives the information—can quickly and easily use it to locate, access, and view the user's Facebook profile without needing additional information. ¶¶ 5, 28. Hence by transmitting a subscriber's unique FID with the title of the video they requested or obtained, The Atlantic shares information that allows an ordinary person to know the video-watching habits of that person. ¶¶ 5, 30. The Atlantic installed the Pixel knowing that it would send subscribers' FIDs and video-watching information to Meta. ¶ 35.

Plaintiff Passariello is a paid subscriber to The Atlantic who provided his personal information when subscribing. ¶¶ 15, 17. He is also a Facebook user whose personal information and other private details are on his Facebook profile. ¶¶ 15–16. Plaintiff visited The Atlantic's website to watch prerecorded video content, including while logged into his Facebook account and using the same browser he uses with Facebook. ¶¶ 18–19, 25. Plaintiff never consented in a standalone form required by the VPPA to the disclosure of his PII to Meta. ¶¶ 2, 20, 42–43. His personal video-watching patterns and preferences have value in digital advertising markets. ¶ 45. The Atlantic's conduct caused Plaintiff's sensitive data, which Plaintiff reasonably expected would remain private, to be shared with a third party and reduced its value. ¶¶ 44–45.

## III.   ARGUMENT

The VPPA prohibits a "video tape service provider" ("VTSP") from "knowingly disclos[ing], to any person," the "personally identifiable information" of "consumers." 18 U.S.C. § 2710(a)–(b). The Atlantic does not dispute that Plaintiff is a "consumer" but argues: (1) it is not subject to the VPPA because it is not a VTSP; (2) it did not disclose Plaintiff's PII; (3) even if it did, the disclosures were not made "knowingly" and were

authorized under the VPPA; and (4) Plaintiff lacks standing to bring a VPPA claim because he suffered no injury and falls outside the zone-of-interest the law was enacted to protect. None of these arguments succeeds given the facts as pleaded.

### A.    Plaintiff Sufficiently Alleges a VPPA Claim.

#### 1.    The Atlantic Is a "Video Tape Service Provider."

A VTSP is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. 2710(a)(4). The Atlantic contends that it is not "engaged in the business" of providing video content materials but instead provides news content. Mot. at 11 (emphasis omitted). That argument misapprehends the statutory text.

As this Court has explained, in the VPPA context, "'business' connotes 'a particular field of endeavor,' *i.e.*, a focus of the defendant's work." *In re Vizio, Inc., Consumer Privacy Litigation*, 238 F. Supp. 3d 1204, 1221 (C.D. Cal. 2017) (quoting Webster's Third International Dictionary). The Atlantic's business must therefore be "substantially involved in the conveyance of video content" and "significantly tailored to serve that purpose." *Id*. Attempting to downplay its video business, The Atlantic refers to a "small quantity of video journalism on its website, as an incidental medium for its reporting, analysis, and commentary." Mot. at 11. This disputed self-serving characterization aside, The Atlantic's precise role in producing and delivering video content is a question of fact. Even a cursory review of The Atlantic's website shows that it provides a variety of video content, including travel and lifestyle videos and other video programming.[3] *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (if an entity "'regularly delivers' video content to users and maintains a cache of videos and visual materials," then it is "plausible to conclude" that the entity "engages in the business of delivering audio visual materials, and that its business is 'significantly tailored to serve that purpose'"). Although The Atlantic repeatedly notes that it is a news

---

[3] https://www.theatlantic.com/video/

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE 2:22-CV-08993-JLS-AFM

organization, the VPPA does not exempt such entities and courts have consistently held that news organizations providing video content on their websites are subject to the VPPA. *See, e.g.*, *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at *2 (D. Mass. Sept. 19, 2022) ("the [Boston] Globe is engaged in the business of delivering various types of video content to its digital subscribers"); *Belozerov v. Gannett Co., Inc.*, 2022 WL 1783215, at *3 (D. Mass. Dec. 20, 2022) (USA Today); *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17069810, at *4 (S.D.N.Y. Nov. 17, 2022) (Epoch Times).

Plaintiff alleges that The Atlantic "provides and delivers prerecorded audiovisual content to its Users." ¶ 24. The Atlantic seeks a new statutory limitation focusing on a video's duration, claiming that the phrase "similar audio visual materials" only includes "hours-long video recordings," not "multimedia journalism." Mot. at 12. The phrase "similar audio visual materials" simply means any medium, tangible or intangible, through which pre-recorded video content can be played. *In re Vizio*, 238 F. Supp. 3d at 1221; *see also In re Hulu Priv. Litig.*, 2012 WL 3282960, at *5-6 (N.D. Cal. Aug. 10, 2012) (the phrase "is about the video content, not about how that content was delivered (*e.g.*, via the Internet or a bricks-and-mortar store)"). Courts have thus held that video content on websites constitute "similar audio visual materials" without regard to length. *See Belozerov*, 2022 WL 1783215, at *3 (agreeing that "computer files containing video content . . . are 'similar audio visual materials'"); *see also Louth v. NFL Enters. LLC*, 2022 WL 4130866, at *4 (D.R.I. Sept. 12, 2022) (finding that "video clips . . . including prerecorded game highlights and other videos" qualify); *Lebakken v. WebMD, LLC*, 2022 WL 16716151, at *3, n. 2 (N.D. Ga. Nov. 4, 2022) (holding that "WebMD is a video tape service provider" because the plaintiff "alleges that WebMD is engaged in the business of delivering prerecorded audio-visual materials to consumers via its e-newsletter and its website"). Further, the term "similar" draws meaning from the phrase that precedes it, "prerecorded video cassette tapes," and the VPPA neither mentions nor implies that such tapes must include video content of a certain length. *See generally* 18 U.S.C. § 2710. In

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE 2:22-CV-08993-JLS-AFM

fact, the Senate Report envisioned that the VPPA would protect "golf videos" the same as "Star Trek videos." *See* S. Rep. 100-599, at *13.

Unable to cite any supporting case law, The Atlantic cites to a Department of Justice brief in another VPPA case, claiming that the DOJ "recently intervened in a pending VPPA class action to reaffirm that Congress did not intend the statute to apply to publishers like The Atlantic or to the type of news content at issue in this case." Mot. at 12. But The Atlantic cherry-picks a portion of the brief to support its argument. In reality, the DOJ stated in response to a First Amendment challenge that, "[n]otably, [the VPPA] does not apply to news organizations, advocacy groups, or other entities whose mission is to publicize information of public import. Nor is it targeted at information that would typically be a matter of public concern." DOJ Br. at 11. In other words, the DOJ's position (which cannot overrule federal law at any rate) is that *publishing an article* about someone's video-watching behavior that is of *public concern* does not violate the VPPA and therefore the law does not abridge the First Amendment. But that does not mean that news organizations, or anyone else, are free to disclose individual citizens' personal video-watching behavior to third parties for ordinary business purposes. In fact, the DOJ brief favorably cites cases holding that news organizations *can* be liable for violating the VPPA and its state equivalents. *See Stark v. Patreon, Inc.*, No. 3:22-cv-03131-JCS, Doc. 49-1 (N.D. Cal. Dec. 5, 2022) (citing, *inter alia*, *Yershov v. Gannett Satellite Info. Networks, Inc.*, 820 F.3d 482 (1st Cir. 2016)).

### 2.     The Atlantic Disclosed Plaintiff's PII.

#### a.     A Facebook ID Is PII.

The Atlantic disputes whether it disclosed Plaintiff's PII, which is defined as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). The Ninth Circuit applies an "ordinary person" test to PII: information is personally identifiable if it "readily permit[s] an ordinary person to identify a specific individual's video-watching behavior." *Eichenberger v. ESPN Inc.*, 876 F.3d 979, 985 (9th Cir. 2017)

(quoting *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 267 (3d Cir. 2016)). The information The Atlantic transmitted to Meta handily satisfies this standard.

The Atlantic insists that "an FID itself is not PII" because "[t]he FID is an anonymized ID number and does not contain a name, address, email, or other information that, when read alone, identifies a person." Mot. at 13. This argument has been rejected by other courts in VPPA cases. Anyone "can use the FID to quickly and easily locate, access, and view the user's corresponding Facebook profile." ¶ 5. Like looking up a telephone number or address in a phone book, linking Plaintiff's Facebook ID to his identity is well within the reach of an ordinary person using a web browser. In *Eichenberger*, the Ninth Circuit held that an ordinary person would not be able to use streaming device serial numbers to identify anyone specific where the serial numbers could be linked to specific persons only by stitching together "an enormous amount of information" collected by defendant "from a variety of sources" using defendant's "complex" proprietary methods of analysis. 876 F.3d at 986. Unlike the device and other anonymized identifiers at issue in *Eichenberger*, Plaintiff's FID readily permits an ordinary person to identify him by typing it into a browser. ¶ 30. Plaintiff's FID thus satisfies the ordinary person test—a result expressly contemplated by *Eichenberger*. 876 F.3d at 986 ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual."); *see, e.g.*, *Stark v. Patreon, Inc.*, --- F. Supp. 3d ----, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022) (concluding that FID constitutes PII under *Eichenberger*).

The Atlantic attempts to analogize this case to *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 184 (S.D.N.Y. 2015), and other cases where courts concluded that device serial numbers and information requiring additional details from other sources are not PII (Mot. at 13-14 & n.1), but as another court has observed, the comparison is inapposite: "Unlike the anonymized device serial numbers disclosed in *Robinson*, Facebook need not link the disclosed FID to personal information obtained elsewhere." *Czarnionka*, 2022 WL 17069810, at *2; *id.* (as here, "Defendant fails to acknowledge that *Robinson* itself

distinguished FIDs from the sort of device serial number disclosed by Disney"). Put differently, "[t]he [FID] . . . is sufficient for an ordinary person to identify Plaintiff and similarly situated individuals by simply typing 'facebook.com/[Facebook ID]' into a web browser. In this way, the [FID] is clearly distinguishable from information found not to qualify as PII by courts adopting the 'ordinary person' standard[.]" *Czarnionka v. Epoch Times Ass'n, Inc.*, 2022 WL 17718689, at *1 (S.D.N.Y. Dec. 15, 2022).

Courts across the country have similarly concluded that a FID qualifies as PII because it is "more than a unique, anonymous identifier. It personally identifies a Facebook user. That it is a string of numbers and letters does not alter the conclusion. Code is a language, and languages contain names, and the string is the Facebook user name." *In re Hulu Privacy Litig.*, 2014 WL 1724344, at *14 (N.D. Cal. Apr. 28, 2014) *see, e.g.*, *Belozerov*, 2022 WL 1783215, at *4 ("A Facebook ID meets the broad definition of PII in this circuit . . . A Facebook ID is a unique identifier that allows anyone to discover the user's identity."); *Lebakken*, 2022 WL 16716151, at *4; *Ambrose*, 2022 WL 4329373, at *2; *Feldman v. Star Trib. Media Co. LLC*, 2023 WL 2388381 (D. Minn. Mar. 7, 2023).

**b.      The Atlantic—Not Plaintiff's Browser—Disclosed His PII.**

The Atlantic also claims that it did not disclose Plaintiff's PII by asserting that his "own browser . . . sends Plaintiff's FID." Mot. at 15. That argument not only raises improper factual arguments (¶¶ 4, 33) but likewise runs headlong into well-established case law. *See Harris v. Pub. Broad. Serv.*, 2023 WL 2583118, at *5 (N.D. Ga. Mar. 20, 2023) (rejecting similar argument and noting that such "arguments are not a proper basis for a motion to dismiss."). If a VTSP operates a website and installs software that tracks users and sends their activity to a third party, that transmission—whether it emanates from the entity's server or the user's browser—constitutes a disclosure. *Czarnionka*, 2022 WL 17069810, at *3 (rejecting the argument that the defendant "did not actually 'disclose' any PII to Facebook," reasoning that, "[b]y installing the Pixel, Defendant opened a digital door and invited Facebook to enter that door and extract information from within");

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE 2:22-CV-08993-JLS-AFM

*Belozerov*, 2022 WL 1783215, at \*3 (finding sufficient "that defendant inserted the code into the USA Today website to transmit users' information to Facebook").

Moreover, The Atlantic's singular focus on Plaintiff's FID is misguided because PII is not limited to information identifying a person but also includes "information which identifies a person *as having requested or obtained specific video materials or services*." 18 U.S.C. § 2710(a)(3) (emphasis added); *see also Feldman*, 2023 WL 2388381, at \*10 (the "'connection' requirement—i.e., that disclosed information connect the consumer to the video material the consumer requested or obtained—finds support in many persuasive cases."). Here, The Atlantic not only disclosed Plaintiff's FID but also the identity of the videos he watched in a single unencrypted transmission, connecting the two forms of personal information. Whether The Atlantic itself can view Meta's cookies does not change the result. *See In re Hulu*, 2014 WL 1724344, at \*15 ("Hulu may not have been able to read Facebook's cookies, but if it knew what they contained and knew that it was transmitting PII . . . then Hulu is liable under the VPPA."); *Harris*, 2023 WL 2583118, at \*5 ("Defendant installed the pixel on its website for that very purpose. Without that, the cookie is irrelevant. That the pixel also requires Plaintiff to be logged into Facebook does not take away from Defendant's role in the transmission.").

### c.   The Atlantic's Disclosures Were Made "Knowingly."

Plaintiff alleges that The Atlantic disclosed his personally identifiable information knowingly, and courts have upheld substantially similar allegations. ¶¶ 30, 33, 35-38, 70–71; *see Louth*, 2022 WL 4130866, at \*3; *Ambrose*, 2022 WL 4329373, at \*2. The Atlantic demands more specifics, but VPPA claims are not subject to a heightened pleading standard, and The Atlantic cites no authority suggesting Plaintiff must allege that The Atlantic specifically knew he had a FID or that he set his browser to allow Meta cookies. *See Harris*, 2023 WL 2583118, at \*7 ("Defendant's argument that it can only be liable under the VPPA if it knew both that a specific plaintiff used Facebook and was logged into Facebook while using Pbs.org does not sway the Court . . . No more precise knowledge is required under the statute."); *Lebakken*, 2022 WL 16716151, at \*5. Rule

9

9(b) provides that knowledge may be alleged *generally*, which Plaintiff has done by alleging The Atlantic controls its website and deliberately installed the Pixel onto it.

### d.     The Atlantic's Disclosures Were Not Permitted by the VPPA.

The Atlantic further contends that "the information that Plaintiff alleges The Atlantic disclosed is excluded from the VPPA." Mot. at 16. The VPPA's text rebuffs that contention. The statute sets forth three conditions that must be met before a VTSP can disclose a consumer's PII without consent: First, the disclosure must be "solely of the names and addresses of the consumer"; second, the video tape service provider must "provide[] the consumer with the opportunity, in a clear and conspicuous manner, to prohibit such disclosure"; and third, the disclosure cannot "identify the title, description, or subject matter of any video tapes or other audio-visual materials; however, the subject matter of such materials may be disclosed if the disclosure is for the exclusive use of marketing goods and services directly to the consumer." 18 U.S.C. 2710(b)(2)(D)(i)-(ii).

Under each prong, the disclosures at issue here are insufficient. First, instead of disclosing only "the names and address of the consumer," The Atlantic discloses an FID, which contains information such as "a Facebook user's name, gender, place of residence, career, educational history, a multitude of photos, and the content of the user's posts." ¶ 29. Second, rather than providing an actual opportunity "to prohibit such disclosures," The Atlantic merely notifies consumers that it "may" use their information "to facilitate the delivery of targeted advertising." Trobich Decl., Ex. 1 at 7. The referenced "Third Parties" section of The Atlantic's Privacy Policy similarly states that "[w]e also allow our third party partners . . . to use cookies, web beacons, and other tracking technologies to provide ads about goods and services that may be of interest to you." *Id.* at 13. And the referenced "Privacy Choices" section simply provides users with an overview of various cookie-blocking mechanisms to explore rather than a concrete opportunity to prohibit all disclosures. *Id.* at 13–15. The Atlantic even states that "using these tools to opt out of tracking and targeting *does not* mean that you will not receive advertising while using our Services or other websites, *nor* will it prevent the receipt of interest-based advertising from

10

third parties that do not participate in these programs." *Id.* at 13 (emphasis added). The third prong is not met because The Atlantic discloses the titles of the videos its user watched. ¶ 4. The VPPA's disclosure exception therefore does not apply.

### 3. Plaintiff Has Standing to Assert a VPPA Claim.

The Atlantic also raises two standing-related challenges to the VPPA claims. Yet "both history and Congress's judgment demonstrate that Plaintiffs' claimed injuries are sufficiently concrete for Plaintiffs to have standing to bring suit under the Video Privacy Protection Act." *In re Vizio*, 238 F. Supp. 3d at 1217. The Atlantic first argues that Plaintiff "fails to assert any damages that [he] actually suffered from The Atlantic's alleged disclosure" and thus lacks Article III standing. Mot. at 18. This argument is foreclosed by the Ninth Circuit's *Eichenberger* decision. Second, The Atlantic argues that Plaintiff lacks statutory standing because he does not fall within the zone of interests the VPPA was enacted to protect. But there is no dispute that Plaintiff meets the definition of a "consumer", and his cause of action arises under and seeks to protect the same privacy interests protected by the VPPA.

For Article III standing, a plaintiff must demonstrate that they have suffered injury in fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision. *Bennett v. Spear*, 520 U.S. 154, 162 (1997); *Sisley v. DEA*, 11 F.4th 1029, 1034 (9th Cir. 2021). Plaintiff alleges that The Atlantic disclosed information he reasonably expected would be kept private (¶ 44) and that he suffered economic harm because the disclosures diminished the value of his personal information and the services he paid for (¶¶ 46-47). The Atlantic contends that "the Complaint does not specify how Plaintiff's PII diminished in value" and that its "Privacy Policy did disclose all information that Plaintiff claims he would like to know before paying for his subscription." Mot. at 18–19. Nevertheless, a plaintiff who alleges a violation of the VPPA "need not allege any further harm to have standing" because the law protects "a *substantive* right to privacy that suffers *any time* a [VTSP] discloses otherwise private information." *Eichenberger*, 876 F.3d at 983 (emphasis in original). As

that court explained, "*every* disclosure of an individual's 'personally identifiable information' and video-viewing history offends the interests that the statute protects," and "[t]he VPPA does not protect only against harms such as embarrassment and harassment—as Defendant argues. Rather, the statute also protects privacy interests more generally by ensuring that consumers retain control over their personal information." *Eichenberger*, 876 F.3d at 983 (citing *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1341 (11th Cir. 2017); *In re Nickelodeon*, 827 F.3d at 274).

The Atlantic further argues that Plaintiff fails to allege that his injuries fall "within the zone-of-interest for a VPPA claim" and "facts showing proximate cause." Mot. at 27–28. *See Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 196 (2017) (explaining difference between Article III and statutory standing requirements). The zone-of-interest test "looks to the statutory provisions at issue and asks whether Congress authorized the plaintiff to sue under them." *Ray Charles Found. v. Robinson*, 795 F.3d 1109, 1119–20 (9th Cir. 2015) (citation omitted). The test is not "especially demanding." *Ocean Advocs. v. U.S. Army Corps of Engineers*, 402 F.3d 846, 861 (9th Cir. 2005) (citation omitted). The question is "whether a legislatively conferred cause of action encompasses a particular plaintiff's claim." *Lexmark Int'l, Inc. v. Static Control Components*, Inc., 572 U.S. 118, 127-28 (2014). In other words, the question is "whether Congress created a private cause of action in legislation[.]" *Organized Vill. of Kake v. U.S. Dep't of Agric.*, 795 F.3d 956, 964 (9th Cir. 2015).

Here, The Atlantic does not dispute that Plaintiff fits the statutory definition of consumer and the VPPA explicitly affords him a cause of action. 18 U.S.C. § 2710(b)(1). The Atlantic maintains that Plaintiff was not injured by its failure to disclose its PII sharing in a standalone form as mandated by the VPPA. But under "zone of interest" analysis, "if a federal statute permits a plaintiff to bring a claim, a court may not conclude that the plaintiff is outside of the 'zone of interests' that the law protects and thereby preclude the lawsuit." *Jawk Enters., LLC v. Greenlight Energy, Inc.*, 2019 WL 5881752, at *1 (E.D.N.Y. Nov. 5, 2019) (citation omitted). Courts have thus rejected the very argument

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE 2:22-CV-08993-JLS-AFM

The Atlantic makes here. *See Wilson v. Triller, Inc.*, 598 F. Supp. 3d 82, 92 n.4 (S.D.N.Y. 2022) ("Triller argues that any injury resulting from this 'purely procedural violation is not within the zone-of-interests that Congress aimed to protect when it passed the VPPA' . . . Because it is clear from the statute that a 'distinct and separate' disclosure form is required, there is no basis for Triller's assertion that Wilson's claim may be precluded simply because a lower, non-statutory disclosure bar has been met."); *see also Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1222 (9th Cir. 2022) (plaintiffs fell within the zone of interests of the TCPA where they met definition of persons or entities protected by the statute); *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 656 (4th Cir. 2019).

The Atlantic also claims that Plaintiff does not sufficiently show proximate cause between its failure to adhere to the VPPA and his injuries. Mot. at 20. For damage claims under a statute with a common law analog, the proximate cause analysis requires a direct relation between violation and injury. *Bank of Am. Corp. v. City of Miami, Fla.*, 581 U.S. 189, 203 (2017). The VPPA cause of action is analogous to the common law tort of intrusion upon seclusion, under which the harm results from the privacy invasion itself. *See Eichenberger*, 876 F.3d at 983; *Perry*, 854 F.3d at 1341. Plaintiff's "VPPA claims are even more deeply rooted in the common law" than Wiretap Act claims. *In re Vizio*, 238 F. Supp. 3d at 1216. Plaintiff has established proximate cause because there is a direct connection between the harm he suffered (loss of control of his private information) and the prohibited conduct (disclosures without standalone consumer consent). The Atlantic's focus on the disclosures embedded within its Privacy Policy (Mot. at 20) does nothing to change the fact that Plaintiff was denied the disclosures in the standalone form *mandated* by the VPPA. *Cf. Abramson v. AP Gas & Elec. (PA), LLC*, 2023 WL 1782728, at *5 (W.D. Pa. Feb. 6, 2023) (allegations satisfying Article III standing for TCPA claim also satisfied "the requisite standing inquiry for statutory causes of action set forth in *Lexmark*").

## B.    The VPPA Does Not Violate the First Amendment.

In addition to challenging the sufficiency of Plaintiff's VPPA claim, The Atlantic also argues that the VPPA claim must be dismissed because the law violates the First

Amendment. It first asks the Court to strike down the VPPA on overbreadth grounds—in other words, even if The Atlantic's speech may be prohibited, the statute is written so broadly that it inhibits a substantial amount of constitutionally protected speech. *See Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998) (discussing difference between facial and as-applied challenges). The Atlantic faces a high burden as "[f]acial challenges are disfavored" because they "often rest on speculation." *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450 (2008).

The Atlantic has not met its burden. The VPPA regulates commercial speech and the disclosure of private facts. Moreover, a consumer's personal video preferences are typically not of legitimate news interest to the public, and The Atlantic does not contend otherwise. Thus, courts have upheld the constitutionality of state laws modeled on the VPPA as well as other statutes that limit the dissemination of the private information of citizens. *See, e.g.*, *Boelter v. Hearst Commc'ns, Inc.*, 192 F. Supp. 3d 427, 452 (S.D.N.Y. 2016) (upholding Michigan law modeled on the VPPA); *Boelter v. Advance Mag. Publishers Inc.*, 210 F. Supp. 3d 579, 602 (S.D.N.Y. 2016) (same); *Trans Union Corp. v. F.T.C.* ("*Trans Union I*"), 245 F.3d 809, 818 (D.C. Cir. 2001) (rejecting First Amendment challenge to Fair Credit Reporting Act); *Trans Union Corp. v. F.T.C.* ("*Trans Union II*"), 267 F.3d 1138, 1140-41 (D.C. Cir. 2001); *Dahlstrom v. Sun-Times Media, LLC*, 777 F.3d 937 (7th Cir. 2015) (upholding analogous Driver's Privacy Protection Act against a First Amendment challenge).

### 1. The VPPA Regulates Commercial Speech.

It is undisputed that the VPPA regulates commercial speech. Mot. at 22. The Supreme Court has made clear that while "the First Amendment accords some protection to commercial speech" it is afforded "*lesser* protection to commercial speech than to other constitutionally guaranteed expression." *Retail Digital Network, LLC v. Prieto*, 861 F.3d 839, 844 (9th Cir. 2017) (en banc) (quoting *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980) (emphasis in original); *see Bd. of Tr. of the State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989). Further, the Court has made clear

"that not all speech is of equal First Amendment importance" and speech implicating matters of public concern lies "at the heart of the First Amendment's protection." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59 (1985) (quotation marks and citation omitted). "[R]estricting speech on purely private matters does not implicate the same constitutional concerns as limiting speech on matters of public interest" because "[t]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas; and the threat of liability does not pose the risk of a reaction of self-censorship on matters of public import." *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) (quotation marks and citation omitted). Particularly because consumers' viewing habits at issue "concern[] no public issue," *Dun & Bradstreet*, 472 U.S. at 762, the VPPA constitutionally limits commercial speech.

The Atlantic begins its constitutional challenge by erroneously asserting that the Supreme Court has held that "[r]estrictions on access to information in private hands, such as customer data, violates the First Amendment." Mot. at 28–29 (citing *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011). This misstates the holding in *Sorrell*, which involved a Vermont law that barred pharmacies from disclosing "prescriber identifying information in order to curb the use of brand name drugs." *King v. Gen. Info. Servs., Inc.*, 903 F. Supp. 2d 303, 308 (E.D. Pa. 2012). The excerpt The Atlantic quotes is taken from the court's rejection of Vermont's contention that the law at issue did not implicate speech at all and was therefore subject to a more deferential standard of review. *See Retail Digital*, 861 F.3d at 847 ("At the outset of its legal discussion, the Court addressed Vermont's argument that the law did not regulate speech . . . That discussion was responsive to Vermont's argument that the restriction was directed at commerce, conduct, and *access to information*, rather than speech, and was therefore subject to rational basis review.") (emphasis added). While *Sorrell* did ultimately hold that the Vermont law was unconstitutional, it did so because Vermont's restriction on speech amounted to an attempt "to 'tilt public debate in a preferred direction' and discourage demand for a particular disfavored product (brand name drugs)," and because the law restricted speech from

15

certain speakers "solely because of the State's disagreement with it." *King*, 903 F. Supp. 2d at 308-09; *Hearst*, 192 F. Supp. 3d at 449-50 (distinguishing *Sorrell*). In contrast to that statute, the VPPA is not predicated on disagreement with any particular message.

## 2. The VPPA Is Not Vague or Overbroad.

The Atlantic further argues that "the VPPA is unconstitutionally vague and overbroad." Mot. at 22. The Supreme Court has "traditionally viewed vagueness and overbreadth as logically related and similar doctrines." *Kolender v. Lawson*, 461 U.S. 352, 358 n. 8 (1983). "[B]oth . . . questions involve the same preliminary inquiry into whether the statute will have a substantial effect on constitutionally protected activity." *Ctr. for Individual Freedom v. Madigan*, 697 F.3d 464, 479 (7th Cir. 2012); *see Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1151 (9th Cir. 2001). There is no overbreadth concern here because limitations on commercial speech that "concerns no public issue" do not violate the First Amendment. *Dun & Bradstreet*, 472 U.S. at 762; *see Hearst*, 192 F. Supp. 3d at 451-52 (rejecting overbreadth challenge to similar Michigan statute); *Trans Union II*, 267 F.3d at 1140-41 (restricting dissemination of consumer credit information does not violate the First Amendment because such speech receives only qualified constitutional protection). The Atlantic maintains that the VPPA's definition of a VTSP is so vague that it potentially implicates any business that places a single video on its website. Mot. at 23. Yet the definition of a VTSP is sufficiently clear that a person of common intelligence can discern its meaning. As a result, the law does not substantially chill protected speech.

Nor is the definition of a VTSP impermissibly vague. "Under the First and Fifth Amendments, speakers are protected from arbitrary and discriminatory enforcement of vague standards." *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 588 (1998). "A defendant is deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question." *United States v. De Anda*, 2019 WL 1207452, at *2 (N.D. Cal. Mar. 14, 2019) (citation omitted). "The touchstone of a facial vagueness challenge in the First Amendment context

16

1   . . . is not whether some amount of legitimate speech will be chilled; it is whether a
2   substantial amount of legitimate speech will be chilled." *Id.* (quoting *Cal. Teachers Ass'n*,
3   271 F.3d at 1152).

4       The VPPA only applies to "any person, engaged in the business, in or affecting
5   interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette
6   tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4). The Atlantic claims that
7   the terms "business" and "delivery" in section 2710(a)(4) are so vague that the VPPA
8   impermissibly deters speech on the theory that businesses fear they will be sued simply
9   because they host a single video on their website. Mot. at 31–32. As an initial matter,
10  however, Congress is not required to define every term within a statute and "perfect clarity
11  and precise guidance have never been required even of regulations that restrict expressive
12  activity." *Ward v. Rock Against Racism*, 491 U.S. 781, 794 (1989); *see Klein v. San Diego*
13  *Cty.*, 463 F.3d 1029, 1038 (9th Cir. 2006). A statute therefore does not have to be written
14  with "mathematical certainty" to withstand a vagueness challenge. *Grayned v. City of*
15  *Rockford*, 408 U.S. 104, 110 (1972); *Rose v. Locke*, 423 U.S. 48, 49 (1975) (the
16  "prohibition against excessive vagueness does not invalidate every statute which a
17  reviewing court believes could have been drafted with greater precision.").

18      Undefined terms in a statute receive their ordinary meaning. *Taniguchi v. Kan Pac.*
19  *Saipan, Ltd.*, 566 U.S. 560, 566 (2012); *see also Babbitt v. Sweet Home Chapter of*
20  *Communities for a Great Oregon*, 515 U.S. 687, 702 (1995) (noting that a term in a statute
21  should be construed based on the words around it). The words "business" and "delivery"
22  are sufficiently clear to a person of ordinary intelligence because they are words of
23  "common understanding" with plain meanings. *United States v. Kilbride*, 584 F.3d 1240,
24  1257 (9th Cir. 2009) (citation omitted); *cf. United States v. Williams*, 502 F.2d 581, 583
25  (8th Cir. 1974) (there was "little doubt" as to the meaning of "business"). When viewed
26  in the context of the statute, the dictionary definitions show that the meanings of
27  "business" and "delivery" are clear. The relevant definitions of "business" are an entity
28  that engages in commercial activity "as a means of livelihood" or one that engages in a

commercial enterprise. "Delivery" simply means "sending." Mot. at 23 (citing Merriam-Webster's website). These meanings of "business" and "delivery" do *not* support a conclusion that an ordinary person would believe they could be liable for violating the VPPA simply because their website contains a single video (Mot. at 23). *Cf. United States v. Skinner*, 25 F.3d 1314, 1318 (6th Cir. 1994) (concluding the term "engaged in the business" had a "common sense definition[] and [was] not vague"); *United States v. King*, No. 5:22-CR-00215-001, 2022 WL 17668454, at *2 (E.D. Pa. Dec. 14, 2022) (declining to dismiss criminal indictment based on challenge to the term "engaged in the business" and other provisions of the Gun Control Act). Neither is there a concern that any company that "run[s] a television commercial" is necessarily subject to the VPPA. Mot. at 23–24. As this Court concluded in *Vizio*, businesses too "peripherally or passively involved in video content delivery" are not VTSPs.[4] 238 F. Supp. 3d at 1221-22 (rejecting "resort to parade of horribles" that the definition of VTSP would sweep in too many businesses).

Even if the VPPA's provisions could be regarded as vague—and they are not—a VTSP is only liable for *disclosing PII* if it did so *knowingly*. The Supreme Court "has recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982). Further weighing against The Atlantic's vagueness challenge, the VPPA imposes civil rather than criminal penalties. *Id.* at 498-99 ("The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties[.]").

The Atlantic has not shown that the VPPA infringes on a substantial amount of protected speech. *See Hoffman*, 455 U.S. at 494-95 ("In a facial challenge to the

---

[4] The Atlantic's references to other VPPA cases does not support its contention that the definition of VTSP is susceptible to an overly broad interpretation. Mot. at 22 n.5. As it notes, VPPA suits have been brought against various media and entertainment entities, owners of newspapers, and sports leagues that provided (or owned companies with websites providing) a substantial amount of video content to consumers.

18

overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail.").

### 3.    The VPPA Meets Intermediate Scrutiny.

Under *Central Hudson*, 447 U.S. at 566, a restriction of commercial speech survives intermediate scrutiny if: (1) the government has a substantial interest in restricting the speech; (2) the regulation directly advances that interest; and (3) the regulation is no more extensive than necessary to serve the interest. *See Retail Digital*, 861 F.3d at 844. The VPPA satisfies each of these prongs.

### a.    The VPPA Protects a Substantial Privacy Interest.

The VPPA's targeted restrictions on speech seek to protect and defend the privacy and liberty interests of consumers. *See* S. Rep. No. 100–599 at 2–4; *Eichenberger*, 876 F.3d at 983. The Atlantic argues that the government lacks a substantial interest in preventing the disclosure of personal video-watching preferences (Mot. at 24), but the Supreme Court has recognized a substantial interest in protecting personal privacy. *See Whalen v. Roe*, 429 U.S. 589, 606 (1977) (Brennan, J., concurring); *Barr v. Am. Ass'n of Pol. Consultants*, Inc., 140 S. Ct. 2335, 2348 (2020) (noting "Congress's continuing interest in protecting consumer privacy"); *see also, e.g.*, *Hearst*, 192 F. Supp. 3d at 448.

Citing *Brown v. Entertainment Merchant's Association*, 564 U.S. 786 (2011), The Atlantic suggests that the VPPA's commercial disclosure restrictions lack historical precedent. In *Brown*, the Court reiterated that legislators are not free to "create new categories of unprotected speech" absent "persuasive evidence that a novel restriction on content is part of a long (if heretofore unrecognized) tradition of proscription." *Id.* at 792. But the VPPA is not a legislative attempt to carve out a new category of unprotected speech. Commercial speech has long received reduced protection under the First Amendment, and limiting disclosure of private matters for commercial gain does not raise nearly the same degree of constitutional concern as restricting public speech on matters of public concern. *Dun & Bradstreet*, 472 U.S. at 762.

The Atlantic's insistence that the VPPA imposes novel restrictions on speech also disregards that at common law "[s]ince the early 1900s", "the existence of a right of privacy [has been] recognized in the great majority of the American jurisdictions that have considered the question." *Perry*, 854 F.3d at 1340 (quoting Restatement (Second) of Torts § 652A cmt. a). The VPPA is therefore "similar" to the traditional common law "tort of intrusion upon seclusion" except that it "subjects a video service provider to liability only when that provider actually discloses the consumer's personal information." *Id.* at 1341. Moreover, "Supreme Court precedent has recognized in the privacy context that an individual has an interest in preventing disclosure of personal information." *Id.* (citing *DOJ. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 762 (1989)). The VPPA thus "follows a long line of statutes passed by Congress to extend privacy protections to records that contain information about individuals." *In re Hulu*, 2012 WL 3282960, at *6).

> **b.    The VPPA's Restrictions Directly Advance the Stated Interest.**

The VPPA directly advances the governmental interest of protecting consumer privacy. *See Hearst*, 192 F. Supp. 3d at 448 (explaining that this prong requires that the statute will actually alleviate the harm instead of offering "only ineffective or remote support") (citation omitted). As the court in *Hearst* concluded in upholding the analogous Michigan statute: "The statute brings within its ambit the individuals who sell those goods, restricting the reasons for which they can disclose the identifying information they collect about their customers. Preventing the disclosure of consumer data to third parties by sellers—those most likely to possess and collect that information—reduces the likelihood of consumers' private details becoming public." 192 F. Supp. 3d at 449; *accord Advance Mag.*, 210 F. Supp. 3d at 600; *see also* S. Rep. 100–599; *Trans Union II*, 267 F.3d at 1142.

The VPPA's consent option materially advances the government's interest in protecting privacy by ensuring that information a VTSP obtains as a part of a private exchange remains under the consumer's control. *See Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065–66 (9th Cir. 2015). The Atlantic complains that the VPPA's "onerous and arbitrary" consent requirement does not materially advance the government's interests.

But it is unable to cite a single case to support its unfounded claim that "the ample case law does not prioritize" these requirements. Mot. at 24–26. The VPPA permits the disclosure of PII so long as a VTSP obtains informed, written consent in a standalone form from the consumer beforehand. 18 U.S.C. § 2710(b)(2)(B). The requirements are not difficult—especially when "Congress amended the VPPA in 2012 to reflect the realities of the 21st century . . . by clarifying that video tape service providers may obtain informed, written consent of consumers on an ongoing basis via the Internet." *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015). In fact, The Atlantic itself suggests that businesses can readily obtain consent from consumers online, by arguing that Plaintiff *did* consent to its information-sharing practices, though not in the statutorily-required form. Mot. at 20.

The Atlantic also argues that the consent requirement unduly burdens "journalists who publish video news coverage." Mot. at 25. The VPPA is a law of general applicability—it applies broadly rather than singling out the press—and such laws can be applied to media organizations without any offense to the First Amendment. *See Cohen v. Cowles Media Co.*, 501 U.S. 663, 669 (1991) ("[G]enerally applicable laws do not offend the First Amendment simply because their enforcement against the press has incidental effects on its ability to gather and report the news."). Thus, it is "beyond dispute that" the news media "has no special immunity from the application of general laws. [It] has no special privilege to invade the rights and liberties of others." *Id.* (citation omitted). At any rate, the challenged conduct has nothing to do with The Atlantic's journalistic conduct and everything to do with its commercial marketing activities.

### c. The VPPA Reaches No Further Than Necessary.

The VPPA also satisfies the third prong of the *Central Hudson* analysis because it is no more extensive than necessary to serve the government's interest. 447 U.S. at 564. This factor considers "the 'fit' between the legislature's ends and the means chosen to accomplish those ends." *Boelter*, 192 F. Supp. 3d at 449 (citation omitted). In other words, it is "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE 2:22-CV-08993-JLS-AFM

single best disposition but one whose scope is 'in proportion to the interest served,' that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 632 (1995).

The VPPA's limitations are reasonable in relation to the privacy interests Congress sought to protect. The statute restricts the disclosure of a narrow range of consumer information—information that would reveal that a consumer watched a specific video—and nothing else. Like Michigan's statute, the VPPA "advances the [government]'s goals without unduly burdening Defendant's ability to engage in commerce." *Hearst*, 192 F. Supp. 3d at 449; *Advance Mag.*, 210 F. Supp. 3d at 602. Additionally, in the unlikely event that a consumer's private film preferences become relevant to public discourse, the VPPA does not prohibit disclosure of such information from sources *other* than a video tape service provider. *See Hearst*, 192 F. Supp. 3d at 452. Further narrowing its tailoring, the VPPA also contains a knowledge requirement. *See Dahlstrom*, 777 F.3d at 955.

The Atlantic repeatedly insists that the VPPA consent requirements are more extensive than necessary but "[t]he dictates of *Central Hudson* do not require the [government] to adopt the 'least restrictive means' of advancing its asserted interests." *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 104 (2d Cir. 2010); *Fox*, 492 U.S. at 480 (a statute need not be "absolutely the least severe that will achieve the desired end."). The VPPA as enacted by Congress is appropriately tailored.

### 4.    The Atlantic's As-Applied Challenge Similarly Fails.

The Atlantic also argues that the VPPA violates the First Amendment when applied to it. The as-applied challenge largely repeats the same arguments as the facial challenge—*i.e.*, an assertion that the VPPA is vague and overbroad—which lacks merit for the reasons discussed above. The Atlantic also argues that VPPA "imposes an unconstitutional prior restraint on a news publisher." Mot. at 26. "This argument 'misunderstands the meaning of 'prior restraint' and ignores the long-held distinction between prior restraints and subsequent punishments." *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1145 (D. Minn. 2017) (quoting *Nat'l Fed'n of Blind v. FTC*, 303 F. Supp. 2d 707,

723 (D. Md. 2004), *aff'd* 420 F.3d 331 (4th Cir. 2005); *see also Van Bergen v. State of Minnesota*, 59 F.3d 1541, 1551 n.6 (8th Cir. 1995) (state law regulating phone solicitations was not a prior restraint). "First Amendment law fully accepts the ability to penalize speech that occurred in the past, after it has been challenged and the speaker has had the opportunity for appellate review." *Nat'l Fed'n of Blind*, 303 F. Supp. 2d at 723 (citing *Alexander v. United States*, 509 U.S. 544, 553 (1993) ("[O]ur decisions have steadfastly preserved the distinction between prior restraints and subsequent punishments.")). Plaintiff in this case is not seeking to enjoin the future disclosure of his information. Instead, the disclosure has already occurred, and subsequently holding The Atlantic liable for that past act would not effect a prior restraint.

The Atlantic also argues that requiring it to comply with the VPPA constitutes an unconstitutional application because it reports news. Mot. at 27. This argument fails because an as-applied challenge turns on the facts of this case, and The Atlantic does not claim that Plaintiff's private viewing information at issue here is a matter of public significance warranting greater constitutional protection. *See Legal Aid Servs. of Oregon v. Legal Servs. Corp.*, 608 F.3d 1084, 1097 (9th Cir. 2010) (an as-applied challenge "does not implicate the enforcement of the . . . law against third parties") (citation omitted). Nor could it. In fact, The Atlantic's disclosures of Plaintiff's PII to Meta and the "news" it reports to its subscribers through videos and articles are entirely separate activities. The VPPA, as a law of general applicability, applies to media organizations like The Atlantic without offending the First Amendment. *See Cohen*, 501 U.S. at 669.

### C.    The UCL Claim is Well-Pled.

The Atlantic challenges Plaintiff's claim for violations of California's Unfair Competition Law. While it raises various arguments as to why Plaintiff fails to sufficiently plead fraud by omission, it overlooks that Plaintiff's claim is brought only under the UCL's "unlawful" and "unfair" prongs, neither of which sound in fraud. ¶¶ 75-79. The unlawful prong "borrows" violations of other federal and state laws and makes them actionable. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012). As

1  Plaintiff has adequately alleged a violation of the VPPA, he has stated a claim for unlawful
2  conduct. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 472 (9th Cir. 2017).

3       Plaintiff also states a claim of "unfair" conduct under "balancing" and "tethering"
4  tests. A practice is unfair under the "tethering test" if it violates a public policy "tethered
5  to specific constitutional, statutory, or regulatory provisions." *In re Adobe Sys., Inc. Priv.*
6  *Litig.*, 66 F. Supp. 3d 1197, 1226 (N.D. Cal. 2014). A practice is unfair under the
7  "balancing" test if it is "immoral, unethical, oppressive, unscrupulous or substantially
8  injurious to consumers" and its harmfulness outweighs its utility. *Id.* A UCL claim is
9  sufficiently tethered if it is "grounded in federal law." *Pallen v. Twin Hill Acquisition Co.*,
10  2013 WL 12130033, at *4 (C.D. Cal. Apr. 26, 2013). Because Plaintiff sufficiently states
11  a VPPA claim and the statute embodies a federal policy against the unauthorized
12  disclosure of private information, the tethering test is met. Plaintiff also states a claim
13  under the tethering test because The Atlantic's conduct violates California's public policy
14  in favor of protecting sensitive consumer information. *See In re Adobe*, 66 F. Supp. 3d at
15  1227. The consumer balancing test, too, "is fact intensive and is not conducive to
16  resolution' at the motion to dismiss phase." *Gianino v. Alacer Corp.*, 2010 WL 11468710,
17  at *4 (C.D. Cal. Aug. 4, 2010). Allegations that The Atlantic disclosed Plaintiff's PII
18  without adequate consent meet this standard. *See In re Adobe*, 66 F. Supp. 3d at 1227; *In*
19  *re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016).

20       The Atlantic also challenges Plaintiff's statutory standing to bring a UCL claim.
21  Diminution of value is a recognized economic injury under the UCL. *Overstock.com v.*
22  *Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 716 (2007). Plaintiff plausibly alleges
23  The Atlantic's disclosures reduced the value of his PII and the services he paid for. ¶¶ 46–
24  47. *In re Anthem, Inc. Data Breach Litig.*, 2016 WL 3029783, at *14-15, *30 (N.D. Cal.
25  May 27, 2016); *see also In re Adobe*, 66 F. Supp. 3d at 1224. Although The Atlantic
26  maintains that these allegations are sufficient, it does not cite a single case in support.

27       Finally, The Atlantic's argument that Plaintiff cannot assert a UCL claim without
28  violating the presumption against extraterritoriality fails because Plaintiff is a California

resident, who sustained an injury in California, and "courts have held that a UCL claim may be brought by a litigant who is a resident of California, regardless of where the alleged misconduct occurred." *Iskander v. Laugh Factory, Inc.*, 2020 WL 2114939, at *10 (C.D. Cal. Mar. 17, 2020) (citing *Norwest Mortg., Inc. v. Super. Ct*, 72 Cal. App. 4th 214, 222 (1999); *Yu v. Signet Bank/Va.*, 69 Cal. App. 4th 1377, 1391-92 (1999)) *see also, e.g.*, *Ready Transp., Inc. v. AAR Mfg., Inc.*, 2006 WL 2131308, at *3 (E.D. Cal. July 27, 2006). The Atlantic's cited case limits its rule against extraterritorial application to *other* situations "where none of the alleged misconduct or injuries occurred in California." *Swearingen v. Late July Snacks LLC*, 2017 WL 1806483, at *9 (N.D. Cal. May 5, 2017).

### D.     Plaintiff Adequately Alleges Unjust Enrichment.

"Under California law, the elements of unjust enrichment are: (1) receipt of a benefit; and (2) unjust retention of the benefit at the expense of another." *ChromaDex, Inc. v. Elysium Health, Inc.*, 2017 WL 7080237, at *4 (C.D. Cal. Nov. 28, 2017). The claim is not limited to circumstances of fraud, as The Atlantic contends. *See In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1159 (N.D. Cal. 2021); *Hennigan v. Gen. Elec. Co.*, 2010 WL 3905770, at *15 (E.D. Mich. Sept. 29, 2010). While The Atlantic argues that its Privacy Policy discloses that it shares information with its advertising partners (Mot. at 31–32), the "actionable wrong" is The Atlantic's failure to obtain Plaintiff's consent in a standalone form before disclosing his PII to Meta for a profit, as opposed to a general failure to adequately disclose The Atlantic's information sharing. Accordingly, just as Plaintiff states a VPPA claim, so too does he "state[] an actionable wrong on which to base [his] unjust enrichment claim." *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1159-60 (N.D. Cal. 2021).

### IV.     CONCLUSION

For the foregoing reasons, The Atlantic's motion to dismiss should be denied. If the Court grants the motion in whole or part, Plaintiff respectfully requests leave to amend under Rule 15.

Respectfully submitted,

Dated: April 12, 2023          By: /s/ *Adam E. Polk*

Adam E. Polk (SBN 273000)
Simon S. Grille (SBN 294914)
Kimberly Macey (SBN 342019)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
*apolk@girardsharp.com*
*sgrille@girardsharp.com*
*kmacey@girardsharp.com*

Sean Greene (SBN 328718)
**GIRARD SHARP LLP**
222 Pacific Coast Highway, Floor 10
El Segundo, California 90245
Tel: (415) 544-6453
*sgreene@girardsharp.com*

Christopher J. Cormier (*Pro Hac Vice*)
**BURNS CHAREST LLP**
4725 Wisconsin Ave, NW, Suite 200
Washington, DC 20016
Telephone: (202) 577-3977
*ccormier@burnscharest.com*

Hannah Crowe (*Pro Hac Vice*)
**BURNS CHAREST LLP**
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone: (469) 904-4550
*hcrowe@burnscharest.com*

*Attorneys for Plaintiff*

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS
CASE 2:22-CV-08993-JLS-AFM